THE BLAIR TOWN LOT AND LAND COMPANY v. KITTERINGHAM.

1. **Public Lands**: RAILROAD GRANT. The act of Congress June 2, 1864, granting lands to the C. R. & M. R. R. Co., was a conditional grant *in presenti*, in the nature of a float covering the lands within twenty miles of the modified line. They were not subject to homestead entry and an enterer could acquire no rights against the grantee in the act.

*Appeal from Harrison District Court.*

MONDAY, JUNE 12.

THIS is an action for the possession of forty acres of land. The defendant denies the allegations of the petition, and alleges that he is the equitable owner of the premises in virtue of a settlement upon the same, and an improvement thereof for the purpose of homesteading them. Trial by the court, and judgment for plaintiff. Defendant appeals.

*T. E. Brannan*, for appellant.

*E. S. Bailey* and *I. N. Kidder*, for appellee.

DAY, J.—The plaintiff introduced in evidence:

1. An exemplified copy of the supplemental list of lands certified to the Cedar Rapids and Missouri River Railroad Company by the General Land Office, on the 30th day of August, 1872, and approved by the Secretary of the Interior on the 2d day of September, 1872. This list embraces the land in controversy, and shows that it was granted to the Cedar Rapids and Missouri River Railroad Company, by the act of Congress, approved June 2d, 1869, amending the act of

Congress granting lands to the State of Iowa, in aid of certain railroads, approved May 15th, 1856.

2. A deed from the Cedar Rapids and Missouri River Railroad Company for the land in controversy, to the Iowa Railroad Land Company, dated November 25, 1873, and filed for record December 2, 1873.

3. A quit claim deed from the Iowa Railroad Land Company to the Blair Town Lot and Land Company for the land in controversy, dated November 26, 1873, filed for record December 2, 1873.

The defendant testified that he came to Missouri Valley, in Harrison county, where the land in controversy is situated, over the Cedar Rapids and Missouri River Railroad; that about eight days thereafter he bought a shanty, situated upon the land in controversy, for fifty dollars; that in April, 1867, he went upon the land in question, and that he has ever since resided thereon; that he has fenced and tilled between one and two acres thereof; that on the second day of May, 1867, he went to the local land office at Council Bluffs, and applied to the register for the homestead title to this piece of land, who said he supposed or thought it belonged to the Burlington and Missouri River Railroad Company, but there was nothing to show on the records that it belonged to any company; that he again applied to the register and receiver for a homestead application, July 8, 1872; that he tendered the officers fourteen dollars, of which they took four dollars and fifty cents, and returned the balance; that he received a duplicate from the office of said land office, they making a reserve for the Chicago, Rock Island & Pacific Railroad Company, and if said railroad company had no right to the land he was to go back and tender the balance, which he did, and that Mr. Bloomer, the receiver, then said he thought the land belonged to the Cedar Rapids and Missouri River Railroad Company.

The defendant also introduced:

1. His application for leave to enter the land in controversy, as follows:

"LAND OFFICE AT COUNCIL BLUFFS, IOWA,  
July 8, 1872.

"I, Henry Kitteringham, of Harrison county, Iowa, do hereby

apply to enter under the provisions of the act of Congress, approved May 20, 1862, entitled 'An act to secure homesteads to actual settlers on the public domain,' the northeast quarter of section 15, in township 78, north of range 44, containing 160 acres.

LAND OFFICE AT COUNCIL BLUFFS, IOWA, }<br>
September 14, 1872. }

"I, N. Baldwin, register of the Land Office, do hereby certify, that the above application is for surveyed land, of the class which the applicant is legally entitled to enter, under the homestead act of May 20, 1862, and that there is no valid prior adverse right to the same, except the claim of the Chicago, Rock Island & Pacific Railroad Company." Upon the back of this is the following indorsement: "I hereby certify that the within application and fourteen dollars as fees were this day presented to me, and a homestead receipt demanded for the same, which I refused to issue, for the reason that the land described is claimed by the Chicago, Rock Island and Pacific Railroad Company.

"Applicant appeals to Comissioner of General Land Office.

D. C. BLOOMER, *Receiver.*"

2. A certified list of the lands granted to the Cedar Rapids and Missouri River Railroad Company, as now on file in office of the Register of the State Land Office, approved by the Secretary of the Interior, on July 18th, 1868, under act of Congress of June 2d, 1864. This list does not contain the land in controversy.

3. A certificate of the Register of the State Land Office, showing that the land in controversy has not been certified to the State of Iowa, for the benefit of the Mississippi and Missouri River Railroad, now known as the Chicago, Rock Island and Pacific Railroad Company.

4. A certificate of the Register of the State Land Office, showing that the land in controversy has not been certified or patented to the State of Iowa, for the benefit of the Cedar Rapids and Missouri River Railroad Company or any other company.

The plaintiff does not claim that the land in controversy was granted to the State for the benefit of railroads, but that it was granted to the Cedar Rapids and Missouri River Railroad Company direct, by the act of June 2, 1864. Hence the facts made to appear by the certificates of the Register of the State Land Office are immaterial.

From the testimony introduced it appears that the Cedar Rapids and Missouri River Railroad was not only located, but built as far west as the lands in controversy, before the defendant took possession thereof for the purpose of homesteading them, although they were not certified to said company until the 30th of August, 1872. It is not disputed that the lands are within the limits of the grant of June 2, 1864.

The position of appellant is that the lands were subject to be homesteaded until actually certified to the railroad company under the grant. This position we believe to be altogether untenable. The act of June 2, 1864, like the act of May 15, 1856, is a conditional grant *in presenti*, and, so far as the lands within twenty miles of the modified line of road which the Cedar Rapids and Missouri River Railroad was authorized to make, it is in the nature of a float, depending upon the location of the road for a definite determination of the lands upon which it was to operate. As soon as this definite location was made the grant attached to specific lands. See *Fremont and Mills Counties v. The Burlington & Missouri River R. R. Co.*, 22 Iowa, 125. The defendant acquired no rights, as against the railroad company, by entering upon the premises in dispute under the homestead act, and his application for the land was properly refused by the receiver of the land office.

1. PUBLIC lands : railroad grant.

The court below, under the evidence submitted, properly found that plaintiff was entitled to the possession of the land. Certain errors were assigned, which have not been urged in the argument.

We discover no error in the record.

AFFIRMED.